**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5288-16T3

DONNALEE GILLEN,

     Plaintiff-Respondent,

v.

SHAHAB BINA,

     Defendant-Appellant.

_____

          Submitted October 31, 2018 – Decided November 27, 2018

          Before Judges Alvarez and Mawla.

          On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0321-99.

          Paras, Apy & Reiss, PC, attorneys for appellant (Elissa A. Perkins and Bonnie M.S. Reiss, of counsel and on the briefs).

          Law Office of Timothy F. McGoughran, LLC, attorneys for respondent (Sarah Martynowski and Timothy F. McGoughran, of counsel and on the brief).

PER CURIAM

Defendant Shahab Bina appeals from a June 23, 2017 order granting in part his motion to compel plaintiff Donnalee Gillen to contribute to their children's college expenses. We affirm in part, and reverse and remand in part for the motion judge to conduct a plenary hearing regarding college contribution beginning from January 2015.

The following facts are taken from the motion record. The parties were married in January 1993. Two children were born from the marriage, who are presently twenty-three and twenty-four years of age. A judgment of divorce was entered on March 22, 1999, which incorporated a property settlement agreement (PSA) signed beforehand. Pursuant to the PSA, the parties agreed to joint legal custody of the children with plaintiff designated as the parent of primary residence. The PSA also memorialized the parties' agreement requiring each to contribute to the children's college expenses based on an ability to pay.

Both parties graduated as doctors of chiropractic medicine from New York Chiropractic College. Each is a licensed chiropractor in New Jersey. Plaintiff was a practicing chiropractor from 1998 to 2000. She then began to work part-time in other fields, including massage therapy. In 2000, defendant remarried and moved to Villanova, Pennsylvania where he operates his own chiropractic practice.

2

In 2001, plaintiff moved into a Wall Township home owned by her mother because she could no longer afford to live in the former marital residence. The children sought to live with defendant. On September 11, 2009, the court entered an order temporarily transferring custody to defendant and scheduling a plenary hearing on the modification of custody. As part of this post-judgment proceeding, plaintiff's counsel prepared a proposed consent order, which was signed by plaintiff and her attorney, but never signed by defendant, his counsel, or entered by the court. However, on October 11, 2010, the court entered a consent order memorializing the transfer of custody to defendant and terminating his child support obligation.

In 2011, the parties' older son began the college application process. Plaintiff and defendant communicated regarding prospective schools, the pros and cons of each, and the costs of attendance. The parties' son was accepted to several schools, however, only New York University (NYU) was willing to recruit him for its golf team. At a family meeting in April 2012, plaintiff suggested the parties' son attend a college in New Jersey because she could not afford the NYU tuition. Plaintiff also sent defendant an email on April 27, 2012, expressing her disapproval because the parties' son would need to take loans to meet the tuition. Plaintiff's email made clear she had not committed to pay any

amount for college and had not agreed to either child attending an expensive school. She also stated she would not incur more debt than she already had, would not agree to debts incurred on behalf of the children for college in the future, and did not agree the children should take on large amounts of debt to obtain a college degree.

Notwithstanding, the parties' older son commenced at NYU in September 2012. Defendant certified he and his wife unilaterally paid $67,760 for tuition, room, and board. The older son was diagnosed with Lyme disease during the fall semester of his sophomore year, which required him to take medical leave for the remainder of the semester and return to live with defendant. Defendant and his wife incurred a $27,515 loan to pay for the fall 2013 semester tuition. The older son was also diagnosed with bio-toxin illness, manifesting as severe reactions to mold exposure due to the existence of mold in defendant's home. His illness required remediation of defendant's home. Defendant lacked the funds to pay for the mold remediation. Therefore, he reduced his work hours and performed the remediation himself.

The older son's illnesses kept him out of school until the spring semester of 2014. Instead of returning to NYU, defendant and his wife paid $34,900 in tuition for the older son to attend a college-accredited experiential program. The

parties' son eventually returned to college on a full-time basis during the spring 2016 semester, this time enrolling in Elon University. The record reflects defendant and his wife paid $22,569, and also incurred parent loans totaling $38,866, to fund three semesters of schooling at Elon. Defendant certified the costs for the senior year at Elon would be $45,000.

The parties' younger son decided to attend Wake Forest University because he was offered a spot on its Division I golf team. He began at Wake Forest in September 2013, but only spent three semesters there because his grades did not meet the standards to remain in the golf program as a student-athlete. Defendant and his wife paid $29,920, and incurred loans totaling $53,498, for three semesters of schooling at Wake Forest.

The parties' younger son returned to live with defendant, and worked full-time. He also enrolled in two classes costing $4400, which were paid for by defendant and his wife. He then began attending Elon University in the 2015 fall semester. The younger son spent four semesters at Elon, for which defendant and his wife paid $49,366 and incurred loans totaling $38,866.

As we noted, plaintiff had moved from the former marital residence for financial reasons, and into a home owned by her mother. She certified her chiropractic license lapsed in August 2009, because she could not afford the

5

fees. Plaintiff's mother, who resided in Beaver Falls, Pennsylvania, was diagnosed with Alzheimer's in 2009, and colon cancer in 2011. During this time, plaintiff regularly commuted from her home in Wall to care for her mother, who eventually passed away in January 2016. In addition to caring for her mother, plaintiff was diagnosed with bladder cancer in March 2015.

Plaintiff certified she was unable to support herself during this period because she was caring for her mother, and was dealing with her own illness. However, plaintiff inherited her mother's home in Wall, and her 2017 case information statement (CIS) noted she also received an inheritance totaling $382,482.61 in September 2016.

In January 2014, defendant's wife, who had been the primary breadwinner for the family, experienced serious health problems. In March 2014, defendant and his wife were in an automobile accident, which left him unable to work for three months. His 2014 tax return reflected total gross revenue from his chiropractic practice of $28,153.

Given the circumstances, on January 28, 2015, defendant sent plaintiff an email asking her to contribute one-third of the children's future college expenses. Defendant stated he and his wife would "absorb all of the money" they had spent to date without seeking a contribution from plaintiff if she agreed to contribute

to college moving forward. Plaintiff responded by stating: "I am in no position to pay or take out loans." Defendant sent emails on March 11, March 26, and April 29, 2015, seeking clarification of plaintiff's response, but she did not respond.

On July 29, 2015, defendant's counsel sent plaintiff a letter informing her defendant could no longer afford to pay the children's college expenses and seeking her contribution for the remaining semesters. The parties attended mediation in June 2016, without success. As a result, on February 28, 2017, defendant filed a motion to compel plaintiff's contribution to college.

On June 23, 2017, the motion judge entered an order granting in part, and denying in part, defendant's motion. The judge ordered plaintiff to be responsible for thirty-five percent of the older son's final year of school after he applied for all existing loans, scholarships, and any available financial assistance. The judge denied defendant's request to compel plaintiff's retroactive contribution to the children's education and defendant's request to impute an income of $127,000 to plaintiff.

Although the judge's decision began with an analysis of the factors in Newburgh v. Arrigo, 88 N.J. 529 (1982), he stated "while the court reviewed those factors, this case [fell] upon an agreement between the parties."

A-5288-16T3

Specifically, the judge found the unsigned consent order, dated January 5, 2010, constituted a binding agreement between the parties because they had adhered to its terms. Pursuant to the consent order, the judge concluded plaintiff was not required to contribute to the children's college expenses which had been incurred. However, because the PSA contemplated both parties would contribute to college, the judge reasoned plaintiff should be responsible for thirty-five percent of the older son's final year of schooling because she had the ability to pay from her inheritance. This appeal followed.

I.

> "When reviewing a trial judge's order, we defer to factual findings 'supported by adequate, substantial, credible evidence.'" . . . However, reversal is warranted when the expressed factual findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." . . .
>
> Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred. . . .
>
> While an "abuse of discretion . . . defies precise definition," we will not reverse the decision absent a finding the judge's decision "rested on an impermissible basis," considered "irrelevant or inappropriate factors," . . . "failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." . . .

8

This court does not accord the same deference to a trial judge's legal determinations. . . . Rather, all legal issues are reviewed de novo.

[Ricci v. Ricci, 448 N.J. Super. 546, 564-65 (App. Div. 2017) (citations omitted).]

On appeal, defendant argues the motion judge erred as follows: (1) relying upon the unsigned draft consent order to find a contract in contravention of N.J.R.E. 408; (2) failing to hold a plenary hearing, given the material disputes in fact, before finding defendant had waived a contribution to college; (3) failing to consider plaintiff's receipt of the inheritance and the downturn in his fortunes constituted a changed circumstance requiring a re-evaluation of the college contribution; (4) misapplying the Newburgh factors and failing to explain how he determined plaintiff's thirty-five percent share of the college expenses; (5) considering a memorandum of understanding from the parties' mediation in violation of the mediation privilege; and (6) failing to impute an income to plaintiff.

II.

We first address the motion judge's finding that the 2010 unsigned proposed consent order was an enforceable agreement. As we noted, plaintiff's counsel prepared a proposed consent order, which was signed by plaintiff and

9

her counsel, but not signed by defendant, his counsel, or the court. The proposed consent order addressed many issues, and, as to college, stated:

> [A]ll issues relative to the children's college education shall abide the event; except that [plaintiff] and [defendant] agree to cooperate in filling out and timely submitting any FAFSA federal or other financial aid forms to facilitate the college application and financial aid process. Such cooperation does not bind [plaintiff] to any specific financial contribution. Should [defendant] elect to be responsible for all costs incident to the children's college education, then there shall be no requirement that he consult with [plaintiff] or that the parties reach mutual agreement on such issues.

The motion judge concluded these terms were binding because the parties had adhered to other aspects of the unsigned consent order. Specifically, he found the parties had "followed the parenting time schedule, the transportation arrangement, the provisions regarding the children's expenses, and [d]efendant's child support was terminated pursuant to the agreement." The judge also relied on defendant's email to plaintiff, dated January 28, 2015, stating he and his wife were "willing to absorb all of the money" they had spent to date, and the July 29, 2015 letter from defendant's counsel to plaintiff seeking her contribution for the remaining semesters. The motion judge reasoned "the latter confirms the former and both confirm the understanding [d]efendant would assume the costs alone as outlined in the January 2010 proposed order."

10

We have long recognized the "basic contractual nature" of matrimonial agreements. Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995). "[T]o be enforceable, matrimonial agreements . . . need not necessarily be reduced to writing or placed on the record." Ibid. However, there must be an agreement. Ibid. Although "not every factual dispute that arises in the context of matrimonial proceedings triggers the need for a plenary hearing. . . . [W]e have repeatedly emphasized that trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications." Id. at 47 (internal citation omitted).

Here, the parties dispute whether they intended to be bound by the unsigned consent order. However, we need not reach this issue or defendant's arguments under N.J.R.E. 408, because we agree in part with the judge's conclusions defendant had waived, to a limited extent, a contribution to the expenses he had paid for the children's college education.

Although the judge invoked principles of equity, such as laches and equitable estoppel, the record readily demonstrates the applicability of the related doctrine of waiver. The Supreme Court has stated:

> An effective waiver requires a party to have full knowledge of his legal rights and intent to surrender those rights. The intent to waive need not be stated expressly, provided the circumstances clearly show that

A-5288-16T3

the party knew of the right and then abandoned it, either by design or indifference.

[Knorr v. Smeal, 178 N.J. 169, 177 (2003) (citations omitted).]

Defendant's January 28, 2015 email to plaintiff, in pertinent part, stated:

I am writing to [you] regarding your parental contribution to our sons['] education expenses.

In the spring of 2012 you, [my wife], [your aunt] and I met with the boys to discuss funding for their college. In that meeting you said you were not in any position to pay for your share of college expenses. I asked you if you would pay for your share when you had better finances and [were] working and you said "yes, of course[."] I am assuming that your situation is very different today than [three] years ago and I am reaching out to you again to ask you to pay for your share of the boys['] college expenses.

            . . . .

We are willing to absorb all of the money we have spent to date without asking you to repay us anything.

Moving ahead, I am asking you to pay your share of college expenses for your sons. While you and I should be sharing these expenses [fifty-fifty], [my wife] has offered to pay [one-third], therefore, [my wife] and I will pay [two-thirds] and we are only asking you to help pay for the other [one-third]. I need to emphasize that it is very unusual for a step parent to have made personal sacrifices to provide such financial contributions and continue to be generous and offer to pay [one-third] of our sons['] educational expenses.

12

. . . .

> If you do not have access to the funds, the FAFSA form is easy to fill out online and your financial information will not be visible to us or anybody else for that matter. It is really our intent to do our best to resolve this in an amicable manner and I hope you feel the same.

Plaintiff responded to this email by stating: "I am in no position to pay or take out loans."

In a July 29, 2015 letter from defendant's counsel to plaintiff, counsel stated:

> As you know, to date your former husband . . . has paid all the college expenses for your sons[.] . . . As a result of medical issues which have severely affected his practice and his income, in addition to unexpected expenses for your sons, he is no longer able to absorb the college costs without assistance from you. According to the laws of our state both parents have an obligation to contribute to the college costs for their children.
>
> If, going forward, you are prepared to share all costs of tuition, room, board, books, electronics, dorm set up, supplies and transportation to and from school equally, [defendant] will not seek any reimbursement for past expenses.
>
> [Defendant] would like to resolve this issue expeditiously and without requiring that you disclose your assets and income or engage in costly litigation. . . .

Defendant's counsel also sent a letter to plaintiff on October 8, 2015, which noted that: "By letter dated July 29, 2015 I contacted you and advised you that, due to medical issues that have impacted his practice, [defendant] can no longer shoulder all support and college expenses on his own. I note that there is no order requiring him to do so." Defendant's counsel again sent a letter on February 1, 2016, stating:

> As you may recall I forwarded letters to you on July 29 and October 8 . . . urging you to either suggest or propose a mediator for the purpose of discussing the sharing of college expenses for [the children]. You did not respond to either of those letters.
>
> Out of consideration for you, [defendant] instructed me not to file a motion during your mother's illness. However, at this point he can wait no longer to resolve this matter . . . .

Plaintiff replied to this letter on February 12, 2016, stating:

> I am in receipt of your letters of July 29, 2015, October 8, 2015, and February 1, 2016. In your letter of July 29, 2015 you . . . threaten that I must pay fifty percent of all costs of tuition, room, board, books, electronics, dorm set up, supplies and transportation to and from school or you will charge me past expenses and also have threatened to litigate. Is that true? If so, what is the purpose of mediation?

Defendant's counsel replied to plaintiff's letter on February 17, 2016, stating: "Your reading of my letter as threatening is simply incorrect. [Defendant]

14

sought mediation both because he wants to resolve the sharing of expenses fairly and amicably and because you and [defendant] agreed to attempt mediation before approaching the court."

Given this context, we agree with the motion judge's reasoning defendant did not seek a contribution to the funds expended for college prior to January 28, 2015. The emails defendant's counsel exchanged with plaintiff demonstrated defendant was aware of his right to seek a contribution from plaintiff, but "absorbed" the expense of college for the children and only pursued plaintiff's contribution after he and his wife experienced an adverse change in circumstances. For these reasons, we affirm the judge's finding defendant was barred from seeking contribution to the college expenses he had paid as of January 28, 2015.

III.

Defendant argues his change in circumstances warranted a review of the college contribution, the motion judge misapplied the <u>Newburgh</u> factors and did not explain how he determined plaintiff's thirty-five percent share of the expense, and failed to impute an income to plaintiff. We agree.

In <u>Newburgh</u>, 88 N.J. at 545, the Supreme Court set forth twelve factors for evaluating claims for contribution towards the cost of higher education, which are:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

Here, the motion judge acknowledged there were changed circumstances warranting a review of the parties' college obligation, namely, the downturn in defendant's financial circumstances and plaintiff's receipt of an inheritance from her mother. Defendant argues the judge misapplied <u>Newburgh</u> factors one, two, five, seven, eleven, and twelve, although his brief does not address these factors

16

with specificity. However, defendant specifically addresses the judge's findings regarding plaintiff's ability to pay. Defendant also claims the judge ignored plaintiff's "mortgage-free home, as well as the fact that she did not pay child support, and that she lived rent-free for fifteen years[,]" and asserts it was error for the judge to conclude plaintiff was excluded from the college selection process pursuant to Gac v. Gac, 186 N.J. 535 (2006).

Child support is a right belonging to the child, which cannot be waived. See Martinetti v. Hickman, 261 N.J. Super. 508, 512 (App. Div. 1993). Regardless, we do not reach the claim relating to plaintiff's non-payment of child support because defendant did not seek it in the intervening years when the children moved into his home, and we can discern no concomitant savings on the part of plaintiff as a result of having no child support obligation.

Newburgh factor eleven requires the trial court to assess "the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance." 88 N.J. at 545. In Gac, the Supreme Court addressed the issue of whether a parent who had been estranged by a child and the custodial parent should be required to contribute to the child's college obligation and declined to compel the non-custodial parent's contribution to college under such circumstances. 186 N.J. at 548.

17

Here the motion judge made two seemingly conflicting findings on the issue of the parent-child relationship for college contribution purposes. Addressing <u>Newburgh</u> factor eleven, the judge stated: "There is no indication [p]laintiff does not have a relationship with the children or they have rebuked her advice and guidance." However, later in the judge's opinion, he concluded

> [p]laintiff had no input of influence on the children's choice of higher education and any comment she made was brushed aside. There is also no evidence she was involved in the college selection process for the younger child from the start of his college inquiry in the [f]all of 2012.

Notwithstanding these findings, the motion judge compelled a contribution from plaintiff. Because we have affirmed the judge's decision that defendant was barred from seeking a contribution to the college expense prior to January 28, 2015, the judge's findings as they relate to <u>Gac</u> need not be revisited. However, the parties have a material dispute regarding whether plaintiff was excluded from the college selection process. Therefore, on remand, and following a plenary hearing, the judge should clarify his findings regarding factor eleven and explain how they impact plaintiff's obligation to contribute to the college expense.

18

Defendant argues the motion judge erred when he did not impute an income to plaintiff based on her professional training and education. On this issue, the motion judge reasoned as follows:

> Plaintiff argues she does not have the ability to pay for the children's college expenses. She certifies she has no current income in her [CIS]. Plaintiff was a registered chiropractor at one point but certifies she did not renew her license since 2009. The New Jersey Bureau of Labor indicates an average salary of $123,000 for licensed chiropractors. She attended nursing school but certifies she did not take her NCLEX.[1] The New Jersey Bureau of Labor indicates an average salary of $80,000 for registered nurses. Plaintiff does not practice in either field [d]efendant references. Further she has put forth good reason for her inability to obtain employment in those positions and an extensive absence from such professions. It is unreasonable to expect, or impose, an average earning capacity in a particular profession upon someone who could only begin working in that profession comparable to an entry level professional.
>
> Plaintiff has maintained she does not have the financial ability to contribute towards the children's college expenses, and certifies she made [d]efendant aware of that on numerous occasions. However, the court will note that even assuming [p]laintiff earned those amounts, the request for approximately $200,000 is excessive and well beyond the ability of a person earning those amounts to pay.

---

[1] The National Council Licensure Examination is a nationwide examination for the licensing of nurses.

Defendant argues [p]laintiff should be imputed a particular income in determining her ability to pay. Defendant cites various case law that supports the imputation of income for determination of child support. However, even assuming plaintiff had the ability to earn the income [d]efendant argues should be imputed to her, there is an inherent difference between child support and college contributions. The former is controlled by a parents earning capacity, but the latter is controlled by the parent's actual ability at the time of the requested payment. While financial support of a child is a parental obligation, contribution toward college costs is not; hence the different legal standards and analysis applied by the court. Every child has the right to a basic financial support from both parents, but there is no right to a college education funded by a parent. Thus, a parent can only be forced to pay that which they are capable and the court is not controlled by theoretical abilities.

We disagree with the judge's conclusion that considerations regarding a parent's ability to pay child support and college are dissimilar. "'Imputation of income is a discretionary matter not capable of precise or exact determination[,] but rather requir[es] a trial judge to realistically appraise capacity to earn and job availability.'" Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (citations omitted). In Elrom, we noted the authority to impute income

is incorporated in the New Jersey Child Support Guidelines (Guidelines). See R. 5:6A (adopting Guidelines set forth in Appendix IX-A to the Court Rules). The Guidelines state:

[i]f the court finds that either parent is, without just cause, voluntarily underemployed or unemployed, it shall impute income to that parent according to the following priorities:

> a. impute income based on potential employment and earning capacity using the parent's work history, occupational qualifications, educational background, and prevailing job opportunities in the region. The court may impute income based on the parent's former income at that person's usual or former occupation or the average earnings for that occupation as reported by the New Jersey Department of Labor (NJDOL);

> b. if potential earnings cannot be determined, impute income based on the parent's most recent wage or benefit record
> . . . .

[Elrom, 439 N.J. Super. at 435 (alteration in original) (quoting Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, comment 12 on Appendix IX-A to R. 5:6A at 2635 (2015)).]

Additionally:

> In determining whether income should be imputed to a parent and the amount of such income, the court should consider: (1) what the employment status and earning capacity of that parent would have been if the family had remained intact or would have formed, (2) the reason and intent for the voluntary underemployment or unemployment, (3) the availability of other assets that may be used to pay support, and (4) the ages of any children in the parent's household and child-care

21

alternatives. . . . When imputing income to a parent who is caring for young children, the parent's income share of child-care costs necessary to allow that person to work outside the home shall be deducted from the imputed income.

[Id. at 439 (quoting Child Support Guidelines Pressler & Verniero, Current N.J. Court Rules, comment 12 on Appendix IX-A to R. 5:6A at 2635).]

Notably, we applied the imputation rubric to disputes unrelated to child support when we stated: "These legal precepts equally apply when establishing a party's obligation to pay alimony." Id. at 435-36.

We have previously noted "there is a close relationship between college cost and support[.]" Jacoby v. Jacoby, 427 N.J. Super. 109, 122 (App. Div. 2012). Indeed, "'[r]esolution of [the right to continued educational support] centers on a parent's duty to support a child until the child is emancipated. Consequently, [the child], if unemancipated, may be entitled' to continued support." Ricci, 448 N.J. Super. at 580 (alteration in original) (quoting Newburgh, 88 N.J. at 542).

Therefore, although the motion judge was ultimately free to reject $200,000, and instead impute no income to plaintiff, he should have employed the guideline factors when he considered defendant's imputation request. Furthermore, by conducting a plenary hearing on this disputed issue, the motion

judge would have testimony to enable him to follow the guideline factors, and would have explained: whether plaintiff was voluntarily unemployed; her earnings history; the entry level earnings for plaintiff in the nursing or chiropractic fields, and if plaintiff could achieve those earnings. For these reasons, we remand the determination for further findings on the imputation issue.

Most importantly, although the judge addressed the Newburgh factors, we have no means of understanding how he arrived at a thirty-five percent contribution for plaintiff's share of the college expense. The judge's findings lack an assessment of the parties' income, needs, and expenses to enable us to gauge whether the percentage contribution ordered by the judge was supported by adequate credible evidence of an ability to fund the college expenses through the use of income, assets, credit, or a combination of resources.

The judge's assessment of Newburgh factor six, the financial resources of both parents, was as follows:

> Defendant claims to have no income pursuant to his [CIS], [p]laintiff provided same and her resources are further outlined in [p]aragraph [four][2] above. Although [d]efendant claims no income of note, his [CIS] identified monthly expenses of almost $35,000. In light

---

[2]  Although the judge stated he was referencing Newburgh factor three, we believe he intended factor four, which addresses the parents' ability to pay.

of his nominal income, extensive monthly expenses and lack of significant assets, he must be supported by his now wife. Although she has no financial obligation to the children, the court may consider the extent of his income or resources that become available—or are "freed up"—due to the support he obtains from his wife.

The judge's findings accept the validity of defendant's expenses without a critical analysis or explanation of how defendant could justify such expenses, given the overall financial downturn experienced by defendant and his wife. The findings also lack a description of plaintiff's expenses, defendant's earning capacity, and what income or resources could be "freed up" to fund college.

Although we appreciate the judge's effort to address the Newburgh factors without a hearing, many of these questions as well as the judge's ability to arrive at a record-based percentage for each parent, required one. Indeed, "[m]eaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion. In the absence of reasons, [the court is] left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

Furthermore, because our decision has expanded the time period of college expenses for which plaintiff may be held responsible, this may operate to substantially decrease the percentage of plaintiff's contribution depending on her ability to pay and overall financial capabilities, despite defendant's claims

relating to plaintiff's rent/mortgage-free living circumstances and inheritance. For these reasons, we reverse and remand for a plenary hearing pursuant to Newburgh to determine whether, and to what extent, plaintiff shall be required to contribute to the children's college expenses as of January 28, 2015.

IV.

Finally, we reject defendant's argument the motion judge's discussion of a confidential memorandum of understanding resulting from the parties' failed mediation constituted reversible error. As we noted, the parties engaged in mediation before the motion practice, which generated an unsigned draft memorandum of understanding prepared by the mediator. In the part of the motion judge's opinion addressing the parties' contentions, the judge noted plaintiff had submitted "a [m]emorandum . . . as part of a mediation that states [p]laintiff does not have an obligation towards the children's past college-related expenses in light of her financial situation at the time."

The Supreme Court has stated: "Communications made during the course of a mediation are generally privileged and therefore inadmissible in another proceeding." Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 245 (2013). A mediation communication is defined as any "statement, whether verbal or nonverbal or in a record, that occurs during a mediation or is

made for purposes of considering, conducting, participating in, initiating, continuing, or reconvening a mediation or retaining a mediator." Id. at 255 (quoting N.J.S.A. 2A:23C-2). The privilege does not apply where there is a signed settlement agreement or where there is an express waiver of the privilege by the mediator and the parties. Id. at 257-58.

Generally, reversible error must be clearly capable of producing an unjust result. State v. Castagna, 187 N.J. 293, 312 (2006) (internal citations and quotations omitted). If the error is harmless, it will be disregarded by the court. State v. Macon, 57 N.J. 325, 333 (1971). The prospect of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the [fact-finder] to a result it otherwise might not have reached." Id. at 336.

Here, it was improper for plaintiff to submit the unsigned memorandum as a part of the motion pleadings. However, it was not reversible error for the motion judge to reference the document, where he merely noted plaintiff's claim and did not rely on the document to render his decision. Therefore, the error was harmless.

Affirmed in part, and reversed and remanded in part for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

26

A-5288-16T3